v. HYDRO-QUEBEC  First, the court got those quotes from a declaration, not from the agreement itself, a declaration that selectively cited purported portions of the agreement. We've never seen it. Were they challenged? But you waived the opportunity to ask for the agreement. Oh, no, we did not, Your Honor, respectfully. We suggested to the district court that when they suggested, they did not have all substantial rights. Suggested and demanded are not the same thing. We did request that. Is this at A436, is the footnote two? Is that what we're talking about? Yes. Was there any other request, suggestion, demand? Not specifically on this subject, Your Honor. It's pretty soft language for a hard-hitting litigation practitioner. I thought it was extraordinarily polite, as a matter of fact, deferential. We were attempting to be polite, Your Honor, and we've succeeded. It's pretty soft. We viewed it, you know, candidly. We don't want to discourage that. No. Yes. We intended to be polite and candidly viewed under this court's precedent that if the court were inclined to disregard the representations they had made to other federal courts about their rights and credit the new representations that they had made, that the court should look at the agreement. And that's what we requested. What you're saying is if the court deems further review of the agreement to be relevant to this motion, A123 would respectfully request prompt discovery of it. If the court didn't consider it to be necessary to look at the agreement, I don't. If I'd been the district judge, I wouldn't have taken that as you're saying we have an absolute right to have you look at this, and it's reversible there if you don't. That's what the district court may have said. But under this court's precedent, it is necessarily relevant to whether there are all substantial rights. Well, it's surely relevant, but the question is, is it necessary? The underlying document is relevant. That's plainly true, but is it necessary for the court to review that document when the court has what it regards as sufficient evidence and there's no contrary evidence? There was contrary evidence. That's the distinction here. There were representations made not only to A123 in correspondence, but also to the United States District Court for the Western District of Texas, where Hydro-Quebec sued by itself another defendant, claiming to have standing to sue, claiming to have rights to a significant portion of the technology, claiming to have the rights for all portions of the technology, I believe, to bring suit under the patents and to sub-license the patents. There's no suggestion that none of those are evidence that refutes that as these provisions are all substantial rights were not transferred. In other words, these provisions recite a field of use. They recite one chemical, both of which are smaller than the scope of the claims. And I don't see any challenge to those facts, asserted facts. The challenge was in other statements that Hydro-Quebec's representatives made about the scope of the rights that were transferred, which are inconsistent. In other words, general statements, all rights, or? One they said in correspondence to us was that they had the exclusive right, the exclusive right, to make use and sell lithium iron phosphate and related cathode materials under the patents, which is a representation about having a total right under the patent claim. But even lithium iron phosphate was less than the scope of at least one of the patents. It is one of the embodiments within the claims. But in that representation that I just quoted, they represented they had more rights than that. And in addition to that, they represented they had rights to sue, which, as this court has observed, is the most important right in determining whether someone has been transferred all substantial rights. This is one issue. But even assuming, and it's true, and it may be true. We've never seen the agreement. Assuming that Hydro-Quebec did not receive all substantial rights, that it is a mere field abuse license fee, then the district court still needed to determine whether, although a necessary party, they were indispensable to the suit. OK, let me ask a question about that. I've read this Republic of Philippines case in the Supreme Court. You do cite a couple of cases where a parent was held to adequately represent a subsidiary. But the Supreme Court in the Philippines case seems to suggest that we're dealing with what used to be called an indispensable party issue. That the fact that it's a foreign government, or in this case, a state, that's entitled to sovereign immunity weighs heavily against finding that it's not indispensable. So how do you deal with that? There are two ways. First, it is a factor. And it does weigh heavily, as Your Honor observed. But two, as we discussed later, we believe that Hydro-Quebec, or University of Texas, waived its sovereign immunity in this case. While our case was pending, and they, University of Texas, not ever saying that they were indispensable to that case, commenced a separate action under the same patents against A123 in another court. And that unquestionably waived their sovereign immunity in that case. We believe it also extends to our case. I'm sorry? Suppose we reject that proposition. Suppose we say that that didn't result in a waiver. Where are you then? Does the Philippines case suggest that if there hadn't been a waiver by them, that they would be indispensable? I don't believe it's a per se rule, Your Honor. And in other of this court's precedents, such as the Dinah Pond Screen case, where the Rule 19 factors were gone through, that it would show Hydro-Quebec is not indispensable in this case. One, they never claimed to be. There's no suggestion in the record that University of Texas said, we will be prejudiced in any way if this lawsuit proceeds without us. Won't they be? Not if they've given all rights to Hydro-Quebec to commence the litigation. But they obviously haven't given all rights. And there's something they retain, which is significant. And they would be prejudiced if they lost. If they gave all rights to control the litigation to Hydro-Quebec, which it appears they may have done, that would say they have made a determination that we are relying upon Hydro-Quebec to protect our rights in this matter. And in fact, that appears to be what they did when Hydro-Quebec sued Valence Technology in the Western District of Texas. You'll recall Waterman versus McKenzie, the Supreme Court, was a seminal case which distinguished between an assignment which gave all substantial rights and enabled the licensee to sue on its own and a license. Is this anything close to an assignment?  We haven't seen the agreement. It could be. We haven't seen the agreement. But as the court observed under the other Rule 19 factors, even if University of Texas is a necessary party, that this is a declaratory judgment action. The purpose of joining the licensor to a suit commenced by the licensee is to protect the infringer from multiple suits from different parties. Here, where we have commenced a district court declaratory judgment action against a party who threatened us and held itself out as having the right to do so, there is no risk of a threat of multiple lawsuits against Hydro-Quebec or University of Texas implicated in that. We're not. But the problem is the UT patent might be held invalid, and that will affect the interests of the absent party. If that is correct, Your Honor, and in other cases, your court has found that not to be an overriding compelling factor, including in the Dynapon Scream case, where the relief, where if it appears to be the case, University of Texas has given control of the litigation to the licensee, Hydro-Quebec, then it has made the determination that its interests, which include the interest in keeping the patent valid, will be adequately protected. And that's the touchstone under the Rule 19 analysis about whether the absent party will be prejudiced in some way that it had not foreseen by not being present. And again, not to repeat myself, but University of Texas, although they submitted declarations in the district court, nowhere in the record did they say, we will be prejudiced if we're not a party here. And so it is, in addition, the other Rule 19 factors that this court has articulated, that the resolution of a declaratory judgment action after a party has been threatened, such as A123 was, favors the maintenance of the action. And that it's the other Rule 19 factor, which was that it was our choice of forum. A123 chose the forum where it's based, and its technology came from MIT, and they were threatened there, and they chose this as the forum. Law recognizes choice of forum as a valuable thing. It also recognizes that what University of Texas did here was use the federalism of the sovereign immunity rules to choose its forum simultaneously while a lawsuit against its licensee is pending, which it knows about because it participated in that in some fashion, says, we don't want to be a party to this case, but then they sue us in another case. And I believe I'm into my rebuttal time, unless your honors have questions. We will save it for you, Mr. Stoner. Thank you. Mr. Adams. Mr. Adams, is this a Rule 19 case? No, your honor. Don't believe it is. The last paragraph in the judge's memorandum order summarized the judge's determination, which was that the district court was yielding to a later filed case in which all necessary parties were joined in the interest of judicial efficiency and to avoid the risk of multiple litigations. But, your honor, even if it was a Rule 19 case, the district court addressed each of the factors in its analysis without specifically identifying those factors, albeit. But it addressed the prejudice to the Board of Regents. It addressed whether there was other available forums. It addressed the possibility of multiple suits. So where did it address the adequacy of the representation? I mean, that seems to be the heart of the contention here, is that Hydro-Quebec adequately represented the patent holder, and that that meant that the patent holder was not an indispensable party. Well, your honor, I'm aware of no precedent of this court that holds that two separate entities, which have a common interest. The answer is he didn't address that question. He did not address that question, your honor. The only case cited for that proposition is the Dinah-Pond case, your honor, and that the facts there were easily distinguished. There, the party in suit. I understand. But there's a general principle under Rule 19 that adequacy of representation is relevant. And here, the contract apparently did give Hydro-Quebec the ability to bring these suits and to control them, right? So why isn't that a contractual recognition that there's adequate representation of UT's interest by Hydro-Quebec? The reason is it's a field of use license, your honor. They had rights in particular fields of use. They had rights to sub-license. They had rights to enforce within their fields of use. There are fields of use in which the Board of Regents did not assign rights to Hydro-Quebec. Well, that gets back to the question of all substantial rights. That's correct. Which goes back to Waterman versus McKenzie. Are all substantial rights in Rule 19 parallel but equivalent lines of authority? And he didn't cite Rule 19, but that has something to do with this issue. Well, your honor, I think Rule 19a, he explicitly found that the Board of Regents was a necessary party under Rule 19a. He didn't mention Rule 19, but he repeatedly refers to the Board of Regents as a necessary party. It was assumed within that analysis, when based on his conclusion, was that the Board of Regents did not assign all rights to Hydro-Quebec. I think there's very clearly a necessary party rule at 19a analysis. The analysis the judge didn't do as explicitly, if you view this as a Rule 19 case, was the Rule 19b indispensability analysis. But again, each of the factors under Rule 19b are addressed in the memorandum order. Except the adequacy of representation. That's correct, your honor. However, that's also assumed within the factors of the prejudice to the board. It didn't specifically address the adequacy of the representation. However, what it did do is find that the board, because it retained substantial rights in a field of use, would be prejudiced by the termination that invalidating the Board of Regents patents. Your honor, A123 could have sought a declaratory judgment of non-infringement and not put the patents in peril. It chose to go further than that and to seek an influence. But when they provided that A123 could bring an action, that they could control the action, they must have contemplated that an invalidity defense might be raised in that action and that A123 would be a proper party, a sufficient party, to litigate that on their behalf. Well, your honor, there's nothing in the record that indicates the right to control the litigation. They have the right to enforce. There is nothing in there that indicates they have the right to control. And those are different. The right to bring a suit and the right to control the suit are different. There is no, again, I go back, there's no precedent in this court that would establish two separate entities that have a common interest that one, it's sufficient to bring one of those into court and not the other, one necessarily in court and not the other. There's no precedent the other way either, right? Well, I assume there is, your honor. I haven't specifically looked for it, but I'm sure there is precedent in which you have two separate entities. Otherwise, the indispensability analysis would devolve to whether there's a common interest. And any time you have a license or a licensee, you have a common interest. There might be cases out there, but you didn't bother to look for it? Well, your honor, the issue was not brought up in the brief. Then they would have helped you, wouldn't they? Maybe you would think somebody would look for it. Well, your honor, the issue was never brought up in the briefing, and I apologize that I didn't anticipate that particular question. But it was never raised by the other side. The other side simply replies on the Dynapon case, your honor, in which it was the only case cited by the other side, and the facts are easily distinguished. So your honor, in conclusion, I still have more time, so I won't say in conclusion, but. You can conclude any time. But your honor, I would. Why don't you tell us about the fact that the agreement was not made of record? Your honor, the agreement was not made of record because A123 never requested discovering the agreement. First, let me say, this is not a case where Hydro-Quebec was attempting to hide or withhold the agreement. A123, it was a confidential agreement. That confidentiality was owed to a third party that was not a party to the suit. Hydro-Quebec did what they could. They submitted declarations identifying the substance of the agreement, and they also offered to produce the agreement in camera for the district court to review. At that point, it was incumbent on A123 to request production of the agreement if they felt that the declarations were not sufficient. Was there any evidence showing that the license was not limited to a field of use or to a specific compound? Absolutely not, your honor. All the evidence in the record is consistent with the district court's determination that it was that the Board of Regents transferred some, but not all, rights to Hydro-Quebec. There's not a shred of evidence in the record that's contrary to that, your honor. And based on that determination, the Board of Regents is a necessary party to this case. Now, if you turn to the further point, first of all, your honor, this was a case not of Rule 19 analysis. This was a case under the CERCO where the district court determined that it would exercise this discretion to yield to a later filed case. No, no, no. What the district court said was, I'm going to do this because I would be required to dismiss the case. That was the basis for the decision. It's not a discretionary determination. It says, I'm doing this because I would have been compelled to dismiss the case. So the question is, would he have been compelled to dismiss the case? That's the question. Your honor, let me address first the characterization of the order. And second, let me address the question of would he be compelled to dismiss the case. First, your honor, the last paragraph of his order in which the district court summarizes, it says, quote, it is appropriate for the declaratory judgment action, though filed first, to yield to the district court case where the court can achieve a full resolution of the dispute without subjecting the parties to the risks inherent in multiple lawsuits. That is at A-9, your honor, which is the last page of the order, page 8. That is where the district court summarizes the basis that are its determination. Now, turning to your last point, your honor, even if the district court was required to do an expense billing analysis and it wasn't required under CERCO, it was sufficient to find that it was a necessary party and that it was in the judicial economy, it was judicially efficient to yield to a later filed case. Even if it had been required to do a Rule 19B analysis, all the facts are there and the findings are there. The Republic of Philippines case says, if there's sovereign immunity, that factor alone can dictate. The board found that there had been prejudice to the Board of Regents because it's a field abuse licensee. This court and International Game Co. came to the very same conclusion about field exclusive licenses in a field abuse, that there are risks inherent to the patentee. If the Board of Regents patents are invalidated, it will be prejudiced. It'll be prejudiced. It will not have been able to participate in the suit. There's no lessening of the prejudice to the Board of Regents. There is no order. There's no way to invalidate the board's patents without prejudicing it. There's not two separate sets of claims, one which can be invalidated that would only affect the board's right and one which would be invalidated and only affect Hydro-Quebec's rights. So there's no lessening of the prejudice. The third factor, the adequacy of the judgment. As the district court found, this would expose A123 potentially to multiple suits. Indeed, there is a second suit going on. There's a suit going on in the Northern District of California. All necessary parties are joined. All claims between the parties are being adjudicated in one forum. Markman briefs have been filed. And the Markman hearing is in less than two months. So if this case were remanded back to the district court and the district court were then to decide after reviewing the agreement or after addressing additional issues that this case go on, you would have multiple suits between the parties. And last, the adequacy of the judgment. The judgment, there is still an adequate judgment for A123. As I just said, there is already a suit  all of A123's claims. Your Honor, one last point. A123 cannot seek remand to discover a licensing agreement. It never sought in the district court. You will look in vain for a request to discover the agreement, a motion for leave to discover the agreement, a motion to compel the agreement. They never requested the agreement. The best they can do is one sentence in a footnote of a brief filed three years before the motion to reopen. Three years. And that statement is equivocal at best. It in no way says the district court it must discover the agreement or that it's necessary for the agreement. It simply leaves it to the district court's discretion to decide whether further to review the agreement is necessary. At that time, they were perfectly happy to leave it to the district court's discretion to review the agreement. Not until they lost do they now say that the district court abused its discretion by doing precisely what they asked them to do to begin with, which was to review the agreement. Last, Your Honor, I would just like to address, there is not a separate special best evidence rule for patent licensing agreements. The cases that A123 cites do say you must look at the agreement. But that's not a literal analysis of you can't look at a declaration that supports the agreement. You must look at the agreement itself. There's not some special best evidence rule. That case simply stands for the proposition is you must look at evidence related to the agreement. There was declarations. They were undisputed in the record as to what the agreement said. Could you return for a moment to a point that you and Judge Dyke were discussing, and again, the issue of adequacy of representation? What exactly is the state of the record before Judge Taro on, I mean, I know he didn't allude to this issue, but what is the state of the evidence in the record with respect to that issue? That is to say, the extent to which the University of Texas has ceded, what the University of Texas has ceded to HQ and with respect to representation? Your Honor, that would be the only evidence in the record is paragraph 19 of the complaint that was filed in a related action, which I'll point you to the record, I believe. Yeah, the record says that is the complaint. Oh, it would be 621 or 622, Your Honor. Let's turn to that. Paragraph 19. This is a complaint filed by Hydro-Quebec against a different company called Valence. And here it says, Hydro-Quebec not only obtained the exclusive license production of lithium iron phosphate, it also agreed to assume the duty of enforcing the patents. And important to this, Your Honor, is read in context, that's the duty to enforce the rights they have. But even if it was beyond that, the duty to enforce all the fields of use, even that didn't license, there are still rights that Hydro-Quebec did not receive. For example, make, use, and sell lithium manganese phosphate, lithium titanium phosphate, lithium nickel phosphate. There's nothing in the record to indicate a transfer of that rights. And I see I'm out of time. If there's no more questions, Your Honor, I will take it. Is there nothing in the declaration of the general counsel, which was the source of the district court's information about this agreement, about the right to bring the suit? There was nothing particularly about those rights. The discussion in the declaration was about the general make, use, and sell rights. The subsidiary rights, such as the license to sub-license, the rights to sub-license those rights,  were not addressed in the declaration. That declaration, Your Honor, is at A-276 and A-276. I'm sorry, A-246 and A-247. Thank you, Mr. Adams. Mr. Schoner has 2 and 1 half minutes, almost 3 minutes. Thank you, Your Honor. Judge Lurie asked whether there was any evidence in the record that Hydro-Quebec has more than a field of use license. A-751 has that. A-751, where Hydro-Quebec says they entered into a patent license agreement with UT, quote, whereby HQ obtained the exclusive world right to make and sell lithium iron phosphate and related patented cathode materials for rechargeable batteries described and claimed in the patents ensued. And then later say they believe that as the exclusive licensee, it has claims against A-123 for infringement. So there is evidence in the record of that. And as this court has observed, it's important in these cases to look at the entire agreement and not in snippets of it quoted by self-interested parties to see really what the agreement was about. Did you raise the adequacy of representation issue before the district court in connection with the Rule 19 issue? I believe we did, Your Honor. It's in our briefing, which I believe is in the appendix. I don't have the site right here where we went through a full Rule 19 analysis with the indispensability analysis with the district court. You, and I believe Judge Bryson, had asked about adequacy of representation. One thing that was not said here, but it's clear in the record at A-1375, is that Hydro-Quebec and University of Texas have the same lawyers in this matter. They have the same lawyers representing them in pursuing this case. In Texas. In Texas. And that's correct in Texas. But to the extent there are proceedings in Massachusetts, I expect so as well there. And that representation has to be adequate, because as Hydro-Quebec observed in its brief on page 44, to the extent there are a division of fields of use and licenses here, they're inseparable from one another. So that both parties, by defending a patent claim, will defend the rights of the other to that patent claim as well. Finally, your honor, this is not, Dinopon is not the only case where this court has found a patent owner not indispensable to proceeding with the case. The Dalby-Exxon case did as well. Unless the court has questions, I'm finished. I just want to comment. My appendix in your brief is printed upside down. You should be careful about that. I'm very sorry, your honor. I'm very apologetic about that. Shows that I read it. Yes, it does. And honestly, if you'd asked, if you'd said anything, we would have given you in five minutes a new one. So very, very sorry for that. Thank you, Mr. Stoner. We'll take the case under advisement. The honorable court has decided that the warrant will be extended.